[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 27, 1997
On November 4, 1994 plaintiff filed this motion for modification of alimony claiming that since the date of the original judgment of November 20, 1981 and its modification by stipulation of the parties on March 2, 1987 there has been a substantial change of circumstances of the parties sufficient to warrant modification of the alimony award. A brief history of this matter as condensed from both the court file and evidence presented at various hearings before this court is first in order.
The plaintiff wife, who was born August 19, 1941 and the defendant husband, who was born June 2, 1939, were married in East Providence, Rhode Island on November 10, 1966. There were two children issue of the marriage, a son, Jeffrey Orrin, who was born September 27, 1967 and a son, Michael Ryan, who was born November 17, 1973. Michael suffers from Down's Syndrome and, in addition, has several physical problems. The parties were divorced on November 10, 1981 at which time the trial judge, inter alia, entered the following order:
 "And it is ordered that the husband shall pay to the wife the sum of $350 per week as unallocated alimony and family support. Upon the oldest child attaining the age of 18 years that amount shall be reduced to $200 per week. Upon the youngest child attaining the age of twenty-one years, the unallocated alimony and child support shall terminate completely.
And it is further ordered that in the event the plaintiff CT Page 6676 wife shall remarry, the order for unallocated alimony and support shall convert to a support order in the amount of $175.00 per week per child for a total of $350.00."
Continuing with background information, it is noted that on March 2, 1987, at which time the older child Jeffrey was nineteen years old, the parties stipulated that the original court order of unallocated alimony and support be modified and increased to $400 per week. Defendant at that time also agreed to pay certain of Michael's camp expenses. Both parties later filed similar motions for modification of the existing order: defendant by motion dated March 29, 1990 and plaintiff by motion dated October 15, 1990. Both motions were denied by the court on October 16, 1990. Thereafter, on November 4, 1994, plaintiff filed this motion for modification of alimony "so that it continues indefinitely rather than terminating on November 17, 1994" (the date on which Michael reached the age of twenty-one years) Plaintiff further claimed "a substantial change of circumstances of the parties." A hearing on plaintiff's motion began in this court on May 14, 1996, recommenced on October 23, 1996 and was followed thereafter by this court's memorandum of decision of November 19, 1996 wherein it held that "the Superior Court was without jurisdiction to enter its order of November 20, 1981 requiring defendant to provide support for his minor child after he had reached his majority and that this court now has authority to open and modify such order."
The background information relating to the plaintiff's motion having been recounted, this court first concludes that while the written stipulation of the parties on March 2, 1987 may have corrected such deficiencies as existed in the original court order of November 20, 1981 concerning support for an adult child, there nevertheless remains unresolved the issue of whether the agreed upon order terminated plaintiff's right to obtain alimony extending beyond Michael's twenty-first birthday. The stipulation had concluded with the following statement: "Upon the youngest child attaining the age of twenty-one years the unallocated alimony and support shall terminate completely."
The positions of the parties on the meaning and intent of this phraseology are predictably at variance. Plaintiff claims that the language is clear and unambiguous to the effect that the existing order is subject to modification. Defendant in turn argues that the original court order, which was later modified by stipulation, provided for time limited alimony which terminated CT Page 6677 completely when Michael reached the age of twenty-one.
Section 46b-86 (a) C.G.S. provides that any final order for the periodic payment of alimony may be modified unless the decree precludes modification. For the alimony to be non-modifiable, it is vital that language to that effect appear in the decree, inasmuch as such limits on modification, as a general rule, are not favored. Cummock v. Cummock, 180 Conn. 218, 222-23 (1980);Rau v. Rau, 37 Conn. App. 209, 212 (1995). Such language to be effective must be clear and unambiguous. Burns v. Burns,41 Conn. App. 716, 724 (1996). This statute further "suggests a legislative preference favoring the modifiability of orders for periodic alimony." Scoville v. Scoville, 179 Conn. 277, 279
(1979).
The problem with the clause in question is that while it provides for the termination completely of unallocated alimony and support upon Michael becoming twenty-one years old, it is silent on the issue of alimony thereafter. Not a word is said about time limited alimony or the non-modifiable term or amount of alimony alone subsequent to that event. Absent any helpful language on the issue of modification thereafter of alimony, it is concluded that the existing order is sufficiently vague and ambiguous to be subject to modification.
Having concluded that modification of the 1987 stipulated court order of unallocated alimony and support is warranted, this court refers to the matter of Matles v. Matles, 8 Conn. App. 76,79-82 (1986) for aid in determining the procedure to be followed in fashioning an appropriate initial award of alimony, if such is merited. In Matles, the defendant father had moved for modification of an order for unallocated alimony and support, his son having reached the age of majority. There it was held that "when the obligation to support the child no longer exists it becomes appropriate for the trial court to examine the facts and circumstances of the parties as they exist at the time of such occurrence and to modify such orders to reflect the changed circumstances." Supra, 79-80. In conducting such examination the court must ascertain that portion of the unallocated alimony and support which was then attributable to child support.
In compliance with the dictates of Matles, there follows a recounting of the evidence as it pertains to the facts and circumstances of the parties as they existed on November 17, 1994, the date on which Michael became twenty-one years old. CT Page 6678 Having concluded that an order of the court which was void ab initio, but later validated by stipulation of the parties, was nevertheless sufficiently vague and ambiguous on the issue of its finality as to allow for or permit its modification, this court must now determine whether additional expenses incurred by a divorced mother on behalf of her physically and mentally incapacitated adult child may properly be considered when ruling upon a request for modification of an alimony award.
In disputes involving the construction of Sec. 46b-81c C.G.S., the marital distribution statute which is strikingly similar to Sec. 46b-82 C.G.S., the alimony statute with which this court is now concerned, it has been consistently held that a court "in the exercise of its inherent equitable powers, may also consider any other factors which may be appropriate for a just and equitable resolution of the marital dispute." Robinson v.Robinson, 187 Conn. 70, 72 (1982); Osborne v. Osborne,2 Conn. App. 635, 642 (1984). Our Supreme Court resisted the temptation to resolve the very issue now facing this court when it stated in the matter of Misinonile v. Misinonile, 190 Conn. 132, 136 (1983) "the court had the power to hear and determine the issue of alimony. Whether in making its determination it could consider the economic impact on the plaintiff of providing care and comfort for her child after she had attained her majority we need not and therefore do not decide. We reserve that issue for another day.
In the matter of Cariseo v. Cariseo, 160 Conn. 141, 143
(1983) where the issue was whether an award of alimony could be modified based on increased financial obligations of a parent resulting from her maintenance of her adult children in the family home while attending college, our Supreme Court, in deciding whether such expenditures constituted a substantial change of circumstances sufficient to warrant such a modification, succinctly stated "the short answer to this question is no."
In Clement v. Clement, 27 Conn. App. 364 (1992) it was indirectly held that Sec. 46b-84 does not authorize the court to consider the maintenance of an adult child in fashioning a property award in accordance with the provisions of Sec. 46b-81c C.G.S. Considering the striking similarity between that statute and Sec. 46b-82, C.G.S., which concerns alimony, this court concludes that, contrary to plaintiff's contention, the court may not, in fashioning an award of alimony, consider the maintenance CT Page 6679 by one of the parties of an adult child whatever her mental or physical infirmities. It is left for the legislature to correct such inequities as may result from this ruling.
While this finding is contrary to the thrust of plaintiff's argument, namely that her care for her adult incapacitated child is a factor to be considered in making an award of alimony, it does not necessarily follow that no award of alimony should be made either now or in the future. In making a determination as to the appropriateness of an award of alimony after Michael became twenty-one, a review of the evidence existing at that time as it relates to Sec. 46b-81c C.G.S. is in order. See Matles,supra, pp. 79-82.
On November 17, 1994 Michael celebrated his twenty-first birthday and defendant has made no payments of alimony or support to plaintiff since that date. Speaking of her present physical condition plaintiff testified that "I'm well — I'm not on medication — I'm happy — I'm in pretty good health." She stated she had taught school for twenty-two years and had a gross weekly income therefrom of $1062. She mentioned that Michael had graduated from Farmington High School in June, 1995 and presently was living with her. Going into detail she testified that Michael had Down's Syndrome, was physically active but had a hole in his heart, that he had fine motor skills, had trouble lifting things, and had difficulty keeping his weight down. She stated further that Michael had poor vision; read at a second grade level; had non-existent skills in mathematics; became nervous in a new situation; had worked in the past at a box company and a supermarket; and was presently unemployed and looking for work. Michael does not have a driver's license and plaintiff has paid $570 per month to a retired teacher to be responsible for him while she is at work. Concerning Michael's future plaintiff testified as follows: "I looked into residual placement. He is happy with his friends. It will be ten or fifteen years before he could be considered for placement. One thousand people from Southbury are waiting for placement. I never leave him alone at night."
Plaintiff also recounted details surrounding the sale by the parties of their interest in Compass Realty. Plaintiff's financial affidavit submitted to the court at the October 16, 1990 hearing stated the worth of her one-half interest in that business to be "value unknown" while defendant valued his stock in that concern at $100,000. Compass Realty was sold on April CT Page 6680 11, 1995 for $1,000,000. Defendant received a consulting fee of $250,000 plus $500,000, and plaintiff received $250,000 therefrom. The parties also later shared pending sales receipts from the company amounting to $400,000.
Plaintiff's financial affidavit of October 15, 1990 indicated a total net weekly income from employment, interest and child support of $875, a gross estate of $405,001 and total liabilities of $8339. Defendant's financial affidavit at that time reflected total net weekly income from employment, interest and real estate investments of $680 and a gross estate of $1,557,239.
Plaintiff's most recent financial affidavit, dated April 8, 1997 shows a total weekly net income from employment, investments and Michael's social security ($127.00) of $666 while defendant's affidavit for that date indicates a total net weekly income from all sources of $853, a total estate of $2,581,125, and questionable liabilities of $512,000. Plaintiff's estate, including her pension valued at $227,561, totals $739,502 while she has present liabilities of $12,710.
The court also notes the following additional evidence in this regard:
1. Plaintiff testified that she had a projected retirement date of 2000 at which time she would receive $30,000 annually in retirement income, and that if she retired in 1998 she would receive $20,000 annually.
2. Defendant in turn stated that in 1994, his last full year of employment, he earned $731,000 and that he is presently retired. In the recent past he underwent surgery for prostate cancer but added that health-wise "I think I'm in good shape. There is no medical reason I can't work." He was recently divorced from his second wife and will be paying her $1000 per week in alimony until August, 1997.
Helpful information on Michael provided by the parties follows:
1. Plaintiff
"Michael, age 23, still can't be left alone. I pay a friend $570 per month (Michael's social security check) to watch over CT Page 6681 him during the day but this may end in June. If I stayed home myself I'd be penalized substantially. Michael is now involved in a basketball program at Central Connecticut State University and his transportation needs have increased. Not long ago I paid $60 to his friend and plane fare for both of them so that Michael could visit his brother Jeffrey who is studying for his M.B.A. at Vanderbilt University. Michael became lost on the way home and I had to go to New Jersey at 1:00 a.m. to pick him up. I'm not preventing Michael from going to work. If he gets a job I'm still responsible for his transportation. I asked (the defendant) for help with Michael's transportation needs but he said he played golf a lot during the summer so I couldn't depend on him. He has seen Michael three or four times during the last year, on no occasion for more than two hours. I have received no financial help with Michael from him since Michael turned twenty-one."
2. Defendant
"I see Michael three or four times a year and call him an equal number of times. Linda (plaintiff) has fifteen questions when I call. Michael doesn't want to get around with me. Linda is his legal guardian, and she wasn't even going to have me named his back-up guardian. I think she has done an excellent job with Michael except for his employment. My concern is that Michael watches television or pays computer games too much. Linda is stifling Michael from getting on with the population. He should get a job. I worry about his ability to socialize."
On the subject of defendant's weekly recreational expenses, he testified that he had within the past year purchased a condominium in Naples, Florida for $145,000. His most recent financial affidavit reveals weekly local golf club and association expenses of $201 and similar Florida weekly expenses of $90.
CONCLUSION
After having reviewed and weighed all of the evidence relating to plaintiff's motion, after having found that the March 2, 1987 stipulation of the parties was sufficiently vague and ambiguous on the subject of the finality of orders relating to alimony as to require modification, after examining the facts and circumstances of the parties existing when Michael became twenty-one on November 17, 1994, after considering all of the factors in CT Page 6682 Sec. 45b-82 C.G.S.; and in an effort to modify the existing order so as to reflect the changed circumstances of the parties following Michael's becoming twenty-one, and after having concluded that the existing order of child support and alimony was almost entirely attributable to child support, this court enters the following order:
Defendant shall pay to plaintiff as alimony the sum of $1 per year. Said sum shall be modifiable as to amount and unlimited as to terms, but shall sooner terminate upon the remarriage of the plaintiff or the death of either party.
BRENNAN, S.T.R.